JONES DAY
PETER J. BENVENUTTI (SBN 60566)
pjbenvenutti@jonesday.com
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: 415-626-3939
Facsimile: 415-875-5700

DURIE TANGRI LLP
RAGESH K. TANGRI (SBN 159477)
rtangri@durietangri.com
JOHANNA CALABRIA (SBN 226222)
jcalabria@durietangri.com
GENEVIEVE P. ROSLOFF (SBN 258234)
grosloff@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
Facsimile: 415-236-6300

Attorneys for Interpleader Defendant and Third-Party/Cross-Plaintiff,
THOMVEST HOLDINGS, LLC, a Delaware limited liability company

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT J. THOMAS, in his capacity as Shareholder Representative on behalf of the shareholders of Legal Systems Holding Company, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM JAMES DEL BIAGGIO, III, a California resident, on behalf of his residual interest as General Partner of SAND HILL CAPITAL II, LP, a Delaware Limited Partnership; R. TODD NEILSON, in his capacity as Bankruptcy Trustee for William James Del Biaggio III, a California Resident; THOMVEST HOLDINGS, LLC, a Delaware limited liability company; and DOES 1- 10,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS. | Case No. 08-30991<br><br>Chapter 11<br><br>ADV. PROC. NO. 11-03191<br><br>**THOMVEST HOLDINGS, LLC'S PRETRIAL STATEMENT** |

Pursuant to the Court's Scheduling Order dated July 16, 2012, (Dkt. No. 44), Thomvest Holdings, LLC ("Thomvest") through its undersigned counsel, hereby submits the following Pretrial Statement.

**Preliminary Statement**

Thomvest finds itself in the regrettable position of submitting the following individual Pretrial Statement or no statement at all. The events that led to this filing are as follows:

Pursuant to the Court's Scheduling Order, the parties' Joint Pretrial Statement was due on Friday, November 2. On Tuesday, October 30, Thomvest contacted counsel for R. Todd. Neilson, in his capacity as Bankruptcy Trustee for William James Del Biaggio, III (the "Trustee") to request counsel's availability for a meet and confer. At that time, the parties agreed to exchange drafts of their respective statements by the close of business the following day (October 31) and meet and confer on November 1. On the afternoon of October 31, Thomvest learned that the Trustee was having formatting issues and would not be in a position to provide its statement until the following day. Thomvest sent its draft as agreed. On the morning of November 1, the Trustee initially requested that a meet and confer be set during the lunch hour, but several minutes later sent another email requesting that Thomvest agree to continue the November 9 conference because it viewed the conference as premature. Thomvest agreed to request the Court to schedule a pretrial conference closer to the trial date, but given that there are a number of unresolved issues between the parties, did not agree to continue the conference.

On the morning of Friday, November 2, the Trustee provided its draft statement to Thomvest. Rather than marking up the draft Thomvest had circulated, the Trustee created a new draft. The parties met and conferred by telephone late that afternoon. In order to enable Thomvest to comment on the Trustee's statement, the parties called the Clerk to jointly request a continuance of the filing deadline until Tuesday, November 6. Thomvest provided the Trustee its comments in the late evening on Monday, November 5. Just after 4 p.m. the following day, the Trustee responded by emailing Thomvest "We don't accept many of the changes that were made and will need to talk through them tomorrow." The Trustee did not send a draft of its comments. The parties attempted to contact the Clerk at almost 5 p.m. but were unable to reach him.

The Trustee's counsel subsequently advised that computer and other issues prevented their ability to work on this document and that they expect to provide comments to Thomvest by about noon

Case: 11-03191    Doc# 58    Filed: 11/06/12    Entered: 11/06/12 22:00:07    Page 2 of 10

tomorrow. The parties have agreed to meet and confer by telephone at 3:30 p.m. tomorrow. However, counsel briefly discussed their respective approaches to this document late this afternoon and did not appear to be in agreement. Given the uncertainty that has surrounded this process thus far and the fact that the parties are ordered to file a statement today, out of an abundance of caution, Thomvest respectfully submits the following statement for the Court's consideration. Many portions of this statement have been copied verbatim from the parties' joint submission of January 26, 2012 to the District Court while the case was pending there.

Thomvest is agreeable to scheduling a pretrial conference closer to the trial date but wishes to proceed with the currently scheduled status conference on November 9 in order to address several unresolved issues, including the scheduling of expert discovery, whether certain issues can be disposed of summarily and establishing a procedure to determine whether the Trustee may take the deposition of Thomvest CEO Peter Thomson under well-established law governing "apex" depositions. Additionally, the parties are attempting to schedule dates for Thomvest witness depositions but have been unable to do so. Thomvest has proposed numerous dates for the deposition of the other witnesses requested by the Trustee but the Trustee's counsel has rejected numerous dates and indicated that the lawyer it wishes to have take the depositions is unavailable for several weeks between now and the close of discovery.

**(1) The Substance of the Action**[1]

This case involves competing claims of ownership to approximately $11 million in cash generated by a September 6, 2002, Warrant to Purchase Common Stock of Legal Systems (the "Warrant") issued by Legal Systems Holding Company ("Serengeti").

On March 2, 2011, Plaintiff Robert J. Thomas, in his capacity as Shareholder Representative on behalf of the shareholders of Serengeti, filed the underlying action in the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1335, seeking to have the court establish an interpleader over the exercisable value of the Warrant, due to competing claims made as to the current true holder of the Warrant.

---

[1] This section is taken almost entirely from the parties' Joint Case Management Statement filed on January 26, 2012 with the District Court ("Joint Case Management Statement") from a section entitled "Brief Description of the Underlying Action."

3
THOMVEST'S PRETRIAL STATEMENT / ADV. PROC. NO. 11-03191

Case: 11-03191   Doc# 58   Filed: 11/06/12   Entered: 11/06/12 22:00:07   Page 3 of 10

On May 19, 2011, the Trustee answered the Complaint for Interpleader claiming a right to the proceeds of the Warrant on behalf the Del Biaggio bankruptcy estate, further answering that William "Boots" DelBiaggio, III ("DelBiaggio") has no direct interest to the proceeds of the Warrant as a result of his bankruptcy filing, and admitting that Thomvest had asserted a competing claim against the Warrant.

On May 19, 2011, Thomvest answered the Complaint for Interpleader, claiming a right to the proceeds of the Warrant and admitting that the Trustee had asserted a competing claim against the Warrant. Additionally, Thomvest asserted cross-claims against Del Biaggio and the Trustee, and brought a Third-Party Complaint against Sand Hill Capital Holdings, Inc. ("Holdings"); in each of those actions Thomvest seeks a declaratory judgment that it is the sole owner of the proceeds of the Warrant.

On June 15, 2011, the District Court for the Western District of Washington entered a stipulated order fully discharging and dismissing Plaintiff from the underlying action and from any further obligation regarding the Warrant subject to certain conditions set forth in the Order, and transferring the case to the Northern District of California. Thereafter, the case was transferred to this Court.

**(2) Undisputed Facts[2]**

In the fall of 2007, Holdings, a venture lending firm founded in March 2000 by Mr. Del Biaggio, owed Thomvest over $10 million. As of time of the transaction Holdings had been in informal liquidation for several years, and Thomvest was Holdings' only remaining secured creditor. Thomvest's $10 million note from Holdings was secured by an interest in all assets of Holdings. In exchange for Thomvest's forgiveness of the $10 million debt, the parties intended to transfer all the assets, performing or non-performing loans and all warrants, from Holdings to Thomvest. In furtherance of that mutual intention, on November 30, 2007, Thomvest and Holdings entered into a Stock Purchase and Sale Agreement (the "Agreement #1"). Robert Johnson, then-President of Holdings, signed Agreement #1 on behalf of Holdings. Through this transaction, Holdings transferred all of its "Stock" (as defined in Agreement #1) to Thomvest in exchange for the forgiveness of $788,015.08 of its debt and the contribution of the remaining $9,211,984.92 of the debt to Holdings' capital. At the time of the transaction, both parties believed that this transaction would result in Holdings' ownership of only the

---

[2] This section is also taken almost entirely from the "Summary of Facts and Claims" section of the Joint Case Management Statement.

4

THOMVEST'S PRETRIAL STATEMENT / ADV. PROC. NO. 11-03191

Case: 11-03191    Doc# 58    Filed: 11/06/12    Entered: 11/06/12 22:00:07    Page 4 of 10

Sand Hill name and potentially one other asset not pertinent here.

Following Agreement #1, the parties also entered into another transaction, which was embodied in an agreement dated the same day as the Agreement #1. Holdings wished to sell to Mr. Del Biaggio the Sand Hill Capital name, as Mr. Del Biaggio wanted to use it for future ventures. Thomvest sold its shares in Holdings to Mr. Del Biaggio—who thereby became the sole shareholder of Holdings—in exchange for $1. The parties to that agreement ("Agreement #2") were Thomvest, Holdings, and Mr. Del Biaggio. Mr. Johnson signed Agreement #2 on behalf of Holdings. All parties to Agreement #2 including Sand Hill Capital made a specific representation as to the only assets being transferred to Mr. Del Biaggo as part of the sale, and did not identify the Warrant as one of the specified assets.

Both parties were unaware that at the time of the transactions, Holdings owned the Warrant. Although the Warrant was of little if any immediate value when it was issued in 2002, it is now worth over $11 million as a result of the acquisition of Serengeti in 2010. Thomvest and the Trustee were unaware that the Warrant existed until 2010, when they (separately) received calls from Serengeti's counsel, who had discovered the Warrant in the course of preparing for the acquisition. The proceeds of the Warrant have been deposited in District Court's registry.

The Trustee's Supplemental Statement of Facts[3]

The Trustee agrees, in large part, with the above statement of facts. However, because the Trustee and Thomvest disagree regarding certain issues, the Trustee submits the following additional explanation.

Thomvest drafted both Agreement #1 and Agreement #2 and neither document evidence an intent that all assets of Holdings would be transferred to Thomvest. For instance, Agreement #1 identified a limited pool of assets that would be transferred from Holdings to Thomvest pursuant to the Agreement #1, the Warrant was not identified as an asset to be transferred to Thomvest.

Similarly, when Thomvest went to transfer the remaining assets of Holdings to Del Biaggio pursuant to Agreement #2, the Warrant was not identified in that agreement either. All parties to Agreement #2 made a specific representation that the" total assets" of Sand Hill Capital being transferred

---

[3] This section is also taken from the parties' January 26, 2012 Joint Case Management Statement.

5

THOMVEST'S PRETRIAL STATEMENT / ADV. PROC. NO. 11-03191

Case: 11-03191    Doc# 58    Filed: 11/06/12    Entered: 11/06/12 22:00:07    Page 5 of 10

to Mr. Del Biaggo as part of the sale were identified on Exhibit A to Agreement #2. The Warrant was not identified on Exhibit A. However, Agreement #2 also specifically provided that the purchase price that Del Biaggio would pay to Thomvest for Holding's assets would remain subject to adjustment until November 30, 2008, "in connection with assets not specifically listed in Exhibit A but which were owed to , held by, or rightfully due Sand Hill Capital Holdings, Inc. as of the Effective Date." Therefore, both Del Biaggio and Thomvest specifically acknowledged that additional assets may exist but which were not identified on the sale agreement. In light of the possibility that additional assets were held by Holdings but not identified in the agreement, Agreement #2 specifically provided that the purchase price that Del Biaggio would pay to Thomvest for Holding's assets would remain subject to adjustment until November 30, 2008 (a date referred to in the agreement as the "Final Adjustment Date"), to the extent that additional assets were discovered by that date. Thomvest chose November 30, 2008 as the Final Adjustment Date, not Del Biaggio.

As noted above, the Warrant was not discovered by either party until 2010 and the Trustee contends that the Warrant is property of the Del Biaggio estate.

Thomvest's Supplemental Statement of Facts

At his recent deposition, Mr. Johnson testified that it was the intent of Holdings to transfer to Thomvest all of Holdings' assets (including performing and non-performing loans and warrants) other than the Kiwico loan, and that the Warrant should have been listed as an asset in Agreement #1 and transferred to Thomvest. Mr. Johnson also stated that the parties' failure to identify the Warrant was unintentional and happened because the Warrant was not listed in the spreadsheet from which he compiled the list of assets to be transferred and because he did not otherwise know about it.

**(3)** **Disputed Facts**

1. Whether, as the Trustee asserts, the "Final Adjustment Date" provision in Agreement #2 defeats Thomvest's claim to the Warrant because the Warrant was discovered after the expiration of the Final Adjustment Date or whether, as Thomvest asserts, the Final Adjustment Date has no bearing on the dispute at all, given the testimony of the parties to Agreement #2 that it does not.

2. Whether, as the Trustee asserts, Agreement #1 and Agreement #2 were drafted in a

6

THOMVEST'S PRETRIAL STATEMENT / ADV. PROC. NO. 11-03191
Case: 11-03191   Doc# 58   Filed: 11/06/12   Entered: 11/06/12 22:00:07   Page 6 of 10

manner to provide tax advantages to Thomvest, or whether, as Thomvest asserts, such a theory may be summarily adjudicated because it has no legal or factual basis.

**(4) <u>Disputed Legal Issues</u>[4]**

<u>Thomvest's Position</u>: Thomvest believes that under the circumstances, it is entitled to reformation of the Holdings-Thomvest SPA on the grounds that the parties made a mutual mistake of fact. Both parties to the Agreement #1 agree that they intended to transfer to Thomvest all warrants of any value or potential value, but mistakenly did not include the Warrant as a listed asset in Exhibit A of the Agreement #1 because neither party was aware of it.

The Agreement #1 calls for application of Delaware law. Under Delaware law, a mutual mistake may entitle a contracting party to reformation, where: (1) both parties were mistaken as to a basic assumption; (2) the mistake materially affects the agreed-upon exchange of performances; and (3) the party adversely affected did not assume the risk of the mistake. In the Restatement (Second) of Contracts, to which Delaware subscribes, "mistake" is used to refer to an erroneous belief. A party's erroneous belief is said to be a "mistake" of that party. The belief need not be an articulated one, and a party may have a belief as to a fact when he merely makes an assumption with respect to it, without being aware of alternatives. An erroneous belief as to the contents or effect of a writing that expresses an agreement also constitutes mistake. Restatement (Second) of Contracts §§ 151, 155 (1981).

Thomvest seeks reformation of the Agreement #1 because the parties came to a specific prior understanding that differed materially from the written agreement, i.e., that all assets of value or potential value—including the Warrant—were to be transferred to Thomvest, that the list attached as Exhibit A to the Agreement #1 did not accurately reflect all of Holdings' warrants at the time the agreement was signed, and that the agreement would have included the Warrant at issue here, had the parties known of it.

<u>Trustee's Position</u>: The Trustee submits that reformation is not an available remedy. Agreement #1 was specifically drafted in a way that transferred only a specifically-identified assets to Thomvest and did not evidence an intent of the parties that "all" assets would be transferred. Moreover, in light of the

---

[4] The remainder of this document is taken from the parties' draft Joint Statement last circulated by the Trustee. Thomvest believes that both parties are agreeable to inclusion of this language in its entirety.

7

possibility that additional assets were held by Holdings but not identified in Agreement #1, Agreement #2 specifically provided that the purchase price that the Debtor would pay to Thomvest for Holding's assets would remain subject to adjustment only until the November 30, 2008 Final Adjustment Date. Since the Warrant was not discovered by the parties until after the expiration of the Final Adjustment Date, the Debtor (and hence the Trustee) may retain the entire value of the Warrant for the benefit of creditors. Moreover, had the Warrant been discovered prior to November 30, 2008, Thomvest would have been entitled to only the *value* of the asset at that time, and not the asset itself. The Trustee believes that the Warrant had little or no value in 2007 or 2008.

Thomvest or its counsel drafted both agreements and must have understood the legal consequences of its actions. By drafting Agreement #1 and Agreement #2 in ways that benefited Thomvest from a tax perspective or otherwise, Thomvest assumed the risk that an asset could be missed and not be discovered by the parties until after the expiration of the November 30, 2008 Final Adjustment Date. Indeed, Thomvest specifically bargained for a one-year "later discovered asset period" (for lack of a better term) and that period has expired.

Thomvest should be estopped from taking a contrary position with regard to its current interpretations of Agreement #1 and Agreement #2. Previously in this case, Thomvest took the position that the Final Adjustment Date in Agreement #2 was the basis for its interest in another (much less valuable) asset that had been omitted from these transactions. In 2010, the Court approved a settlement between the Trustee and Thomvest resolving a dispute over competing claims to proceeds of dividends issued by Wine.com, an entity in which Holdings had an interest. Wine.com was not listed as a corporate asset on either of the Agreements. However, since the Debtor had discovered the existence of the Wine.com asset prior to November 30, 2008, Thomvest relied on the Final Adjustment Date in Agreement #2 for asserting its interest in the Wine.com asset. In the context of this prior dispute, there was no suggestion by Thomvest that Agreement #1 needed to be reformed to include the Wine.com proceeds. Now however, because the Warrant was discovered after the Final Adjustment Date, Thomvest argues that Agreement #1 should be reformed to include the Warrant and that Agreement #2 has nothing to do with this dispute.

Thomvest released its claims against Holdings and the Debtor pursuant to Agreements One and

8

Two, and should not be permitted to assert claims that have been expressly released.

### (5) Witnesses To Be Called By Each Party

Thomvest intends to call the following witnesses:

- Don Butler and Yvonne Verheij, who were the two Thomvest representatives principally involved in the November 30, 2007 transactions on behalf of Thomvest.
- Robert Johnson, who was the President of Sand Hill Capital Holdings during the negotiations leading up to the November 30, 2007 agreements and who signed both agreements on behalf of Sand Hill Capital Holdings.

The Trustee to date has identified no fact witnesses that he will call at trial. The Trustee reserves the right to cross-examine any witness identified by Thomvest and reserves the right to identify expert witnesses on tax issues and Warrant valuation issues.

### (6) An Estimate Of Trial Time Required

Thomvest estimates that the trial will last two to three days.

The Trustee estimates that the trial will last three to four full days.

### (7) Whether Separate Trial Of Specific Issues Is Appropriate

The parties do not believe at this time that a separate trial of specific issues is appropriate.

### (8) Whether It Is Appropriate To Introduce The Direct Testimony Of Any Witnesses By Declaration (Subject To Oral Cross-Examination)

The parties do not believe at this time that it is appropriate to introduce the direct testimony of any witness by declaration.

Dated: November 6, 2012

DURIE TANGRI LLP

By: _____
RAGESH K. TANGRI
JOHANNA CALABRIA
GENEVIEVE P. ROSLOFF

JONES DAY
PETER J. BENVENUTTI
pjbenvenutti@jonesday.com
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: 415-626-3939
Facsimile: 415-875-5700

Attorneys for Interpleader Defendant
and Third-Party/Cross-Plaintiff,
THOMVEST HOLDINGS, LLC,
a Delaware limited liability company